CLAUDIA CENTER (SBN 158255)
*ccenter@dredf.org*
MALHAR SHAH (SBN 318588)
*mshah@dredf.org*
**DISABILITY RIGHTS EDUCATION
    AND DEFENSE FUND, INC.**
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, CA 94703
Tel: +1.510.644.2555
Fax: +1.510.841.8645

[ADDITIONAL COUNSEL AND PARTIES LISTED ON NEXT PAGE]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT A, by and through PARENT A, her guardian; STUDENT B, by and through PARENT B, his guardian; STUDENT C, by and through PARENT C, his guardian; and STUDENT D, by and through PARENT D, her guardian, each one individually and on behalf of all other similarly situated children,<br><br>Plaintiffs,<br><br>v.<br><br>THE BERKELEY UNIFIED SCHOOL DISTRICT and THE BOARD OF EDUCATION OF THE BERKELEY UNIFIED SCHOOL DISTRICT,<br><br>Defendants. | Case No. 4:17-cv-02510-JST<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION ORDER**<br><br>Current Hearing:<br>Date:      January 20, 2021<br>Time:      2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge:     Hon. Jon S. Tigar<br><br>Action Filed:  May 2, 2017 |

DEBORAH JACOBSON (SBN 278104)
*djacobson@jacobsoneducationlaw.com*
**JACOBSON EDUCATION LAW, INC.**
1919 Addison Street, Suite 105
Berkeley, CA 94704
Tel: +1.510.647.8125
Fax: +1.510.280.9340

BRENDAN E. RADKE (SBN 275284)
*bradke@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: +1.415.733.6000
Fax: +1.415.677.9041

SHANE BRUN (SBN 179079)
*sbrun@kslaw.com*
**KING & SPALDING LLP**
601 S. California Ave.
Suite 100
Palo Alto, CA 94304
Telephone: (415) 318-1245
Fax: (415) 318-1200

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    INTRODUCTION ................................................................................. 1

II.    SETTLEMENT TERMS ....................................................................... 3

    A.    The Proposed Settlement Class .................................................. 3

    B.    Class Counsel ............................................................................. 4

    C.    Relief ......................................................................................... 4

    D.    Settlement Administration.......................................................... 5

    E.    Attorney Fees, Service Awards, CY Pres Fees ......................... 5

    F.    Release ....................................................................................... 6

III.    ARGUMENT ........................................................................................ 7

    A.    The Proposed Settlement Class Should Be Preliminarily Certified. ........... 7

        1.    The Settlement Class Is Sufficiently Numerous. ........................... 8

        2.    The Settlement Class Satisfies Commonality. ................................. 8

        3.    Plaintiffs' Claims Are Typical of the Settlement Class. .................. 9

        4.    Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class. .................................................. 10

        5.    The Proposed Class Meets the Requirements of Rule 23(b)(2). ...................................................................................... 11

    B.    The Parties' Settlement Agreement Should Be Preliminarily Approved. ................................................................................... 11

        1.    Plaintiffs and Their Counsel Have Adequately Represented the Class. .................................................................................... 12

        2.    The Parties' Settlement Agreement is the Product of Arms-Length Negotiations. ................................................................... 14

        3.    The Parties' Settlement Agreement Will Provide More-Than-Adequate Relief To Plaintiffs And The Class. ................... 15

            a.    The Potential Costs, Risks, and Delays Associated With Trial and Appeal Weigh In Favor Of Approval. ....... 15

            b.    The Terms of The Parties' Proposed Attorneys' Fee Award Also Weigh In Favor Of Approval. ...................... 16

        4.    The Parties' Settlement Agreement Treats All Class Members Equitably. .................................................................... 17

    C.    The Parties' Proposed Form Of Notice Should Be Approved. ................. 17

    D.    The Fairness Hearing .............................................................. 19

IV.    CONCLUSION .................................................................................. 19

1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Laboratories Norvir Anti-Trust Litig.*,
   Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. Jun. 11,
   2007)...................................................................................................................................... 8

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ................................................................................................... 9

*Am. Council of the Blind v. Astrue*,
   No. C05-04696 WHA, 2008 WL 4279674 (N.D. Cal. Sept. 11, 2008) .................................. 13

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ....................................................................................................... 11

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................................. 17

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008) ...................................................................................... 12, 13

*Churchill Vill., L.L.C., v. GE*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................................. 18

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 12

*D.L. v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) ................................................................................................. 9

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ...................................... 14

*Estrella v. Freedom Fin. Network*,
   No. C 09-03156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010)........................................... 9

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................................................ 10

*Gray v. Golden Gate Nat'l Recreational Area*,
   279 F.R.D. 501 (N.D. Cal. 2011) ....................................................................................... 9, 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...................................................................................... 13, 14, 16

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................... 10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................ 17

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ......................................................................... 10

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................... 12, 18

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................. 9

*In re MyFord Touch Consumer Litig.*,
   No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ...................... 12, 13

*Nobles v. MBNA Corp.*,
   No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................... 14

*O'Connor v. Uber Techs., Inc.*,
   No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ............... 13

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................... 9, 10, 11

*Rannis v. Recchia*,
   380 Fed. Appx. 646 (9th Cir. 2010) ................................................................... 8

*Sali v. Corona Reg'l Med. Ctr.*,
   889 F.3d 623 (9th Cir. 2018) ........................................................................... 13

*Sueoka v. U.S.*,
   101 Fed. Appx. 649 (9th Cir. 2004) ................................................................... 8

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 15

*Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ............................................................................. 9

*Vizcaino v. Microsoft Corp.*,
   142 F. Supp. 2d 1299 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002) .................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................. 9, 11

1
2
3
4
5
6
7
8
9
10
11
2
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

Title II of the American With Disabilities Act, 42 U.S.C. § 12131 *et seq.* ........... 1, 2, 4, 6, 7, 9, 10

California Education Code § 56000 *et seq.* ........................................................ 2, 4, 6, 7

Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ................................................ 19

Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* .................... 2, 4, 6, 7, 9, 10

Rehabilitation Act of 1973 Section 504, 29 U.S.C. § 791 *et seq.* ........................ 1, 2, 4, 6, 7, 9, 10

**Other Authorities**

2018 Northern District of California Procedural Guidance for Class Action
    Settlements, https://www.cand.uscourts.gov/forms/procedural-guidance-for-
    class-action-settlements ............................................................................................ 4

Fed. R. Civ. P. 23 .............................................................................................. 11, 12

Fed. R. Civ. P. 23(a) ........................................................................................... 7, 8, 9

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 8

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 9

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 13

Fed. R. Civ. P. 23(b)(2) ....................................................................... 8, 11, 12, 18

Fed. R. Civ. P. 23(c)(2)(a) ....................................................................................... 18

Fed. R. Civ. P. 23(e) ................................................................................... 12, 13, 18

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................... 12

Fed. R. Civ. P. 23(e)(2) ............................................................................... 12, 14, 15

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................... 18

1 William B. Rubenstein, *Newberg on Class Actions* § 3:55 (5th ed. Supp. 2019) ..................... 13

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 2:00 pm on January 20, 2021, or as soon thereafter as the matter may be heard, Plaintiffs Student A, by and through Parent A, her guardian; Student B, by and through Parent B, his guardian; Student C, by and through Parent C, his guardian; and Student D, by and through Parent D, her guardian, each one individually and on behalf of themselves (collectively, "Plaintiffs") will move the Court for entry of an order (the "Motion"):  (1) granting preliminary approval of their proposed class-wide settlement agreement (the "Settlement Agreement"), submitted herewith as Ex. 1 to the Declaration of Brendan E. Radke ("Radke Decl."); (2) provisionally certifying the proposed settlement class (the "Settlement Class"), for settlement purposes only, and appointing Plaintiffs' attorneys as Class Counsel, pending final approval; (3) approving the Parties' proposed form of notice and directing notice to the Settlement Class; and (4) setting deadlines for notice, objections, and a final fairness hearing.

The proposed settlement is within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to Settlement Class Members and a Final Hearing to finally approve the proposed Settlement scheduled.  Defendants Berkeley Unified School District ("BUSD") and the Board of Education of Berkeley Unified School District (the "Board," and collectively with the BUSD, "Defendants," and collectively with Plaintiffs, the "Parties") do not oppose this Motion.  Radke Decl., ¶ 13.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration and exhibits, all pleadings and papers on file in this action, and any oral argument this Court permits.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On May 2, 2017, Plaintiffs filed this Class Action Civil Rights Complaint for Declaratory and Injunctive Relief ("the Complaint," ECF 1) against Defendants in the United States District Court for the Northern District of California, Case No. 4:17-cv-02510 ("the Action").  The Complaint alleges *inter alia* that, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 ("Section 504"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et*

1

*seq.* ("ADA"), the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (amended by Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108446, Title I) ("IDEA"), California Education Code Section 56000 *et seq.* ("Section 56000") and applicable federal regulations, Defendants maintain policies and practices that discriminate against students with and suspected to have reading disorders and deprive them of a Free Appropriate Education ("FAPE") in the Least Restrictive Environment ("LRE").   The Complaint further alleges that Defendants routinely fail to comply with the requirements of IDEA, 20 U.S.C. §§ 1400 *et seq.*, and its implementing regulations; Section 504, 29 U.S.C. § 794, and its implementing regulations; Title II of the ADA, 42 U.S.C. §§ 12132 *et seq.*, and its implementing regulations; and California Education Code Sections 56000 *et seq.* and its implementing regulations.   Defendants deny that there is any factual or legal basis for the Plaintiffs' claims.

This case has been thoroughly litigated.   On June 19, 2017, Defendants moved to dismiss the Complaint, alleging failure to exhaust administrative remedies and a lack of cognizable claims against the individual defendants.   ECF 46 ("Motion to Dismiss").   Plaintiffs opposed the Motion to Dismiss, and on October 12, 2017, the Court denied the Motion to Dismiss as to the District and the Board but dismissed the individual defendants from the case.   ECF 75.   Defendants answered the Complaint on November 13, 2017.   ECF 85.   The parties commenced discovery, and in late 2017 initiated settlement discussions.   Radke Decl., ¶ 3. The parties participated in two ADR Phone Conferences, ECF 60, 74, 77, and five settlement conferences with the Hon. Laurel Beeler.   ECF 86, 106, 109, 113, 114.   While the parties agreed to stay discovery during the initial period of their settlement efforts, they later engaged in significant discovery efforts, including written discovery, the depositions of each Plaintiff parent, and six Defendant witnesses (Donald Evans, Jan Hamilton, Susan Coto McKenna, Pasqual Scuderi, Julia Nicole Hart, Flor Anne Palma, Lisa Graham, and Maggie Riddle).   Radke Decl., ¶ 4.

After extensive, arms-length negotiations, including the aforementioned five settlement conferences and discovery, the Parties reached a proposed class-wide settlement in the Fall of 2020. The Parties' proposed Settlement Agreement incorporates a comprehensive "Literacy Improvement Program," to be implemented over three to five years.   *See* Exhibit A to Settl. Agmt.   The Literacy

2

Improvement Program was mostly developed, drafted and negotiated by the parties with the direct involvement of Magistrate Judge Beeler during the parties' multiple settlement conferences. The Literacy Improvement Program requires that Defendant BUSD work collaboratively with nationally recognized outside consultants to improve reading and language arts achievement for all students, especially those with or at risk for reading disabilities. Its components include research-based reading interventions for students with reading disabilities, and universal screening and progress monitoring to identify students at risk of reading disabilities. The Literacy Improvement Program also requires that the District adopt a "reading data system" and "reading testing system" for use in Grades K-8 to measure students' reading fluency, and their progress toward academic goals.

Furthermore, the Settlement Agreement requires that Defendants retain an Outside Monitor who will receive and submit progress reports regarding Defendants' compliance with the terms of the Settlement Agreement, including the Literacy Improvement Program. Settl. Agmt. at ¶¶ 2(c) and 4(a) and (b). The Settlement Agreement releases claims by the Plaintiffs and Settlement Class Members, and includes a payment of attorneys' fees and costs to Plaintiffs' counsel. *Id.* at ¶¶ 8 and 10. The Parties believe that the Settlement Agreement, together with the Literacy Improvement Program, reflects a reasonable compromise between the Parties considering the expense, delay and uncertainty of further litigation.

Accordingly, the Parties now ask that the Court enter an order (1) granting preliminary approval of their Settlement Agreement; (2) provisionally certifying their proposed Settlement Class and appointing Plaintiffs' attorneys as class counsel; (3) approving the Parties' proposed form of notice and directing notice to the Settlement Class; and (4) setting all associated deadlines. A Proposed Order is filed concurrently with this Motion.

## II.   SETTLEMENT TERMS

As set forth above, the terms of the settlement are memorialized in the parties' Settlement Agreement and set forth below.

### A.   The Proposed Settlement Class

The proposed Settlement Class consists of:  "All current and future BUSD students who have, may have or are suspected of having a reading disability, such as dyslexia, within the meaning

3

of IDEA, Section 504, the ADA and/or Section 56000."

This proposed class is a simplified version of the class definitions set out in the Complaint, which delineated four groups of BUSD students "who have or may have disabilities because of reading disorders such as dyslexia within the meaning of IDEA/Section 56000 and/or Section 504/ADA and who are or may be subject to BUSD's policies, procedures and practices concerning" (1) identification of students, (2) evaluations for determining eligibility, (3) the provision of special education services, and (4) the monitoring of student progress.  Complaint at ¶¶ 156, 157, 158, 159. While worded differently, the definition set out in the proposed Settlement Agreement does not differ materially from the proposed class set out in Plaintiffs' Complaint and encompasses the same group of students described in the Complaint.

### B.     Class Counsel

"Class Counsel" is proposed to be the Disability Rights Education and Defense Fund, Inc. ("DREDF"), including but not limited to Claudia Center of DREDF; Deborah Jacobson of Jacobson Education Law, Inc. ("JEL"); Goodwin Procter LLP ("Goodwin"), including but not limited to Brendan E. Radke of Goodwin; and King & Spalding LLP ("King & Spalding"), including but not limited to Shane Brun and George Morris of King & Spalding.

### C.     Relief

The relief granted to the Settlement Class is:   the implementation, monitoring and continuation of a comprehensive Literacy Improvement Program in consultation with nationally recognized Outside Consultants over three to five years; monitoring by an impartial Outside Monitor who will receive and submit progress reports on the implementation of the Settlement Agreement including the Literacy Improvement Program; and the payment of $350,000 in attorneys' fees and costs, described in more detail below.

The 2018 Northern District of California Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements ("ND Cal Guidance"), asks for additional information regarding "anticipated class recovery under the settlement," "potential class recovery if plaintiffs had fully prevailed on each of their claims," the anticipated recovery under the settlement versus the potential class recovery if plaintiffs had fully

4

prevailed on each of their claims," "an explanation of the factors bearing on the amount of the compromise," "the proposed allocation plan for the settlement fund," a discussion of the claim form, expected claimants, and claims administrator, and a discussion and explanation of any reversions. *See id.* at section 1(e) through (h). Given the nature of this case and the Settlement Agreement, this requested information is not applicable here.

### D. Settlement Administration

The ND Cal Guidance Section 2 requires information about the settlement administration. Here, Plaintiffs' Complaint sought injunctive and equitable relief only, and the proposed Settlement Agreement provides only non-monetary relief. Given the nature of the Settlement Agreement here, a settlement administrator is not necessary and will not be utilized. Instead, Defendants are required to retain an impartial Outside Monitor to monitor the implementation of the Settlement Agreement.

### E. Attorney Fees, Service Awards, CY Pres Fees

Per the Settlement Agreement, Defendants agree to pay Class Counsel the maximum total sum of $350,000 for attorneys' fees and costs as follows:

a.  The total sum of $175,000.00 shall be paid to the "Disability Rights Education and Defense Fund," co-counsel for Plaintiffs, to be paid in three (3) installments as follows:

    i.  First installment in the amount of $50,000 shall be due within 45 days of the Effective Date;

    ii.  Second installment in the amount of $62,500 shall be due within 180 of the Effective Date; and

    iii.  Third installment in the amount of $62,500 shall be due within one (1) year of the Effective Date.

b.  The total sum of $175,000.00 shall be paid to "Jacobson Education Law," co-counsel for Plaintiffs, to be paid in three (3) installments as follows:

    i.  First installment in the amount of $50,000 shall be due within 45 days of the Effective Date;

    ii.  Second installment in the amount of $62,500 shall be due within 180 of the Effective Date; and

iii.    Third installment in the amount of $62,500 shall be due within one (1) year of the Effective Date.

Counsel for DREDF have expended more than 1777.23 hours in attorney time at hourly rates ranging from $340 to $985 per hour.  Declaration of Claudia Center ("Center Decl."), ¶ 9.  The total lodestar for DREDF is therefore $1,105,645.90.  *Id.*  In addition, DREDF has incurred $3,251.76 in out of pocket costs.  *Id.*  Counsel for JEL have expended more than 1997.7 hours at hourly rates ranging from $410 to $485 per hour.  Declaration of Deborah Jacobson ("Jacobson Decl."), ¶ 9. The total lodestar for JEL is $940,802.50.  *Id.*  In addition, JEL has incurred $2,300.50 in out of pocket costs. *Id*.  While King & Spalding and Goodwin have represented Plaintiffs and in doing so have incurred significant attorneys' fees and costs, and are proposed to be Class Counsel, the Parties acknowledge that these firms have acted in a *pro bono* capacity in this Action and have agreed to waive any and all claims for attorneys' fees and costs in order to obtain the Settlement Agreement.[1] The benefits conferred on the Plaintiffs and the Settlement Class Members are substantial, and the small proportion of lodestar being allocated as fees to DREDF and to JEL is facially reasonable. There are no Service fees or Cy Pres fees being sought as a part of the settlement of this Action.

**F.    Release**

The term "Released Parties" in the Settlement Agreement covers the Defendants and their respective past, present and future superintendents, associate superintendents, officers, directors, board members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, insurers, reinsurers, predecessors and successors in interest.

The "Released Injunctive Claims" are any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for any and all claims for injunctive, equitable, or declaratory relief that are the subject of, included within, and/or arise from the Action, including such claims which could have been brought as educationally-based claims under the IDEA, Section 504, ADA, and/or Section 56000, arising from May 2, 2017, through the Term of the Settlement Agreement.

---

[1] Goodwin and King & Spalding will submit declarations providing their hours, fees, and lodestar if that information would be beneficial to the Court.

1   The releases encompassed by this Settlement Agreement shall not bar any Named Plaintiff

2   or Settlement Class Member from pursuing an individual administrative or judicial action claiming

3   that, as to that Named Plaintiff or Settlement Class Member alone, the individual is not receiving a

4   FAPE in the LRE to which the individual is entitled under IDEA, Section 504, the ADA, or Section

5   56000.

6   The claims released by the Settlement Agreement (education-based claims under the IDEA,

7   Section 504, the ADA, and California Education Code Section 56000) correspond to the causes of

8   action brought in Plaintiffs' Complaint.  There are no differences.

9   **III.    ARGUMENT**

10   **A.    The Proposed Settlement Class Should Be Preliminarily Certified**

11   At the outset, the Court should preliminary certify the proposed Settlement Class for

12   settlement purposes only.  Class certification is appropriate where: "(1) the class is so numerous that

13   joinder of all members is impracticable; (2) there are questions of law and fact common to the class;

14   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

15   class; and (4) the representative parties will fairly and adequately protect the interests of the class."

16   Fed. R. Civ. P. 23(a).

17   The Parties have stipulated to seek provisional certification of the following Settlement

18   Class, for the purposes of settlement only, pending final approval:

19   All current and future BUSD students who have, may have or are suspected of having a

20   reading disability, including dyslexia, within the meaning of IDEA [the Individuals with Disabilities

21   Education Act, 20 U.S.C. § 14W, *et seq*. (amended by Individuals with Disabilities Education

22   Improvement Act of 2004, Pub. L. No. 108¬446, Title I)], Section 504 [Section 504 of the

23   Rehabilitation Act of 1973, 29 U.S.C. § 791], the ADA [Title II of the Americans with Disabilities

24   Act, 42 U.S.C. § 12131 *et seq*.], and/or Section 56000 [the California Education Code Section 56000

25   *et seq*.].

26   This Settlement Class is more simply stated than the class described in Plaintiffs' Complaint

27   but encompasses the same student class.  Moreover, for the purposes of settlement only, the

28   Defendants do not contest that this proposed Settlement Class meets the requirements of Rules 23(a)

7

1  and 23(b)(2) and should be certified.

2  1.    The Settlement Class Is Sufficiently Numerous

3  A proposed class is sufficiently numerous if joining its members as individual plaintiffs

4  would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1).  The numerosity requirement is "not tied to

5  any fixed numerical threshold"—courts generally find that classes with 40 or more members satisfy

6  it, but even much smaller classes can suffice.  *See Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th

7  Cir. 2010) (discussing standard, and affirming certification of 20-member class).  When "general

8  knowledge and common sense indicate that" a class is large, numerosity is met.  *In re Abbott

9  Laboratories Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at

10  *6 (N.D. Cal. Jun. 11, 2007).

11  The Settlement Class satisfies this requirement.  Reading disorders affect a significant

2  portion of the BUSD student population, the prevalence of which is estimated to be between 5

13  percent and 17 percent.[2]  At present, BUSD includes approximately 10,000 students in grades K

14  through 12.  Accordingly, Defendants' deficient policies and practices impact many hundreds of

15  current and future BUSD students.  *See* ECF No. 1 at ¶ 161; *Sueoka v. U.S.*, 101 Fed. Appx. 649,

16  653 (9th Cir. 2004) ("Because plaintiffs seek injunctive and declaratory relief, the numerosity

17  requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs'

18  other evidence that the number of unknown and future members . . . is sufficient to make joinder

19  impracticable.").

20  2.    The Settlement Class Satisfies Commonality

21  The "commonality" requirement of Rule 23(a)(2) is satisfied if the claims of Plaintiffs and

22  the proposed class "depend upon a common contention that is capable of classwide resolution —

23  which  means that determination of its truth or falsity will resolve an issue that is central to the

24  validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

25  (2011).  This does not "mean that *every* question of law or fact must be common to the

26  class." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original)

27

28
---
[2]  1 Jack M. Fletcher, Dyslexia: The Evolution of a Scientific Concept, 15(4) J. of Int'l Neuropsychological Soc'y 501, 501 (July 2009).

8

1   (citations omitted).  The "commonality requirement has been 'construed permissively,' and its

2   requirements deemed 'minimal.'"  *Estrella v. Freedom Fin. Network*, No. C 09-03156 SI, 2010 WL

3   2231790, at *7 (N.D. Cal. June 2, 2010).  "[F]or purposes of Rule 23(a)(2), even a single common

4   question" can establish commonality.  *Wal-Mart*, 564 U.S. at 359 (citation and internal quotation

5   marks omitted); *see also Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012).

6        Here, Plaintiffs alleged that BUSD's policies, procedures and practices related to

7   identification, evaluation, eligibility determination, provision of special education and related aids

8   and services, and monitoring of student progress to determine effectiveness of services provided

9   and need for further evaluation and/or revisions to their IEPs or 504 Plans, violate IDEA, Section

10  56000, and/or Section 504/ADA.  *See* ECF No. 1 at ¶ 162.  These challenged policies, procedures

11  and practices apply to every member of the proposed class.  The legality of these policies and

12  practices is a question "capable of classwide resolution."  *See Wal-Mart*, 564 U.S. at 350.  Where a

13  lawsuit seeks a determination regarding "systemic policies and practices" that affect all of the

14  putative class members—as in this case—Rule 23(a)'s commonality requirement is met.  *See*

15  *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014); *see also B.K. by her next friend Tinsley v.*

16  *Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (finding commonality despite possible differences among

17  class members, and holding that challenge to systemic "policies and practices [was] the 'glue' that

18  h[eld] together the putative class"); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501,

19  512 (N.D. Cal. 2011) (finding commonality satisfied where plaintiffs challenged "uniform policies

20  and practices of failing to ensure" accessibility for people with disabilities); *D.L. v. District of*

21  *Columbia,* 860 F.3d 713, 724 (D.C. Cir. 2017) (finding commonality where plaintiffs identified a

22  common harm—"denial  of a FAPE due to a deficient and poorly implemented [district-wide] Child

23  Find policy.").  Moreover, the relief achieved will redound to every member of the Settlement Class.

24  *See* § II(A), above.

25              3.      Plaintiffs' Claims Are Typical of the Settlement Class

26       Class certification is proper where "the claims or defenses of the representative parties are

27  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under [Rule 23(a)(3)'s]

28  permissive standards, representative claims are 'typical' if they are reasonably coextensive with

                                          9

those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020). "The requirement of typicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought") (citation omitted). Because typicality overlaps with commonality, a finding of commonality usually supports a finding of typicality. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (commonality and typicality requirements frequently "merge").

Here, the claims of the named Plaintiffs are typical of the claims of the Class, in that each named Plaintiff is an individual with a reading disorder, such as dyslexia, that qualifies him or her as eligible for special education and related aids and services under IDEA, Section 56000 and/or Section 504/ADA, but named Plaintiffs claim that they: (1) were not timely identified pursuant to Defendants' Child Find Duty; (2) have not received a timely and appropriate evaluation and eligibility determination; (3) have not received timely and appropriate provision of special education and related aids and services, including an adequate IEP or 504 Plan; and (4) have not received appropriate monitoring of their progress or review of special education and related aids and services documented in their IEP or 504 Plan. *See* ECF No. 1 at ¶ 163; *see also Just Film*, 847 F.3d at 1117-18 (plaintiffs' claims were typical because her injuries "stem[med] from the same scheme" and she could prove "nature" of the violation "for the benefit of all class members"); *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (Where an action challenges a policy or practice, "the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."). The legal theories that Plaintiffs would have relied on to redress this harm apply equally to each member of the proposed Settlement Class, and the relief Plaintiffs have achieved will benefit that class as a whole. *See* § II(A), above.

              4.    <u>Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class</u>

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

CASE NO. 4:17-CV-02510-JST

1     For the reasons discussed in § II(B)(1) below, the Court should find that Plaintiffs and their

2     counsel "will fairly and adequately protect the interests of the class," as Rule 23 requires.  This is

3     particularly true given that Plaintiffs do not have any interests antagonistic to the members of any

4     Class, the relief sought by Plaintiffs will inure benefit to the members of the Class, and Plaintiffs

5     are represented by counsel who are experienced, skilled, and knowledgeable about civil rights

6     litigation, disability rights, and class action litigation.  *See* ECF No. 1 at ¶ 164.

7                    5.      The Proposed Class Meets the Requirements of Rule 23(b)(2)

8     Rule 23(b)(2) is designed to facilitate civil rights class actions.  *Parsons*, 754 F.3d at 686.

9     Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive

10    or declaratory relief from policies or practices that are generally applicable to the class as a whole."

11    *Id.* at 688 (certifying (b)(2) class of prisoners challenging defendant's centralized policies and

12    practices of "uniform and statewide application" even where those practices "may not affect every

13    member of the proposed class . . . in exactly the same way"); Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2)

14    is "'almost automatically satisfied in actions primarily seeking injunctive relief.'"  *Gray*, 279 F.R.D.

15    at 520 (quoting *Baby Neal*, 43 F.3d at 58; *see also Wal-Mart*, 564 U.S. at 362 ("[C]ivil rights cases

16    against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2)

17    is meant to capture.") (internal quotation marks omitted).  "Cases challenging an entity's policies

18    and practices regarding access for the disabled represent the mine run of disability rights class

19    actions certified under Rule 23(b)(2)."  *Californians for Disability Rights, Inc. v. California Dep't

20    of Transp.*, 249 F.R.D. 334, 345  (N.D. Cal. 2008) (certifying (b)(2) class challenging transportation

21    agency's deficient design guidelines and inaccessible facilities) (collecting cases).

22    Here, certifying the proposed Settlement Class under Rule 23(b)(2) is appropriate because

23    the Settlement Agreement and accompanying Literacy Improvement Program will address the

24    deficiencies of the policies, procedures and practices alleged in the Complaint and Plaintiffs and all

25    members of the proposed class will be subject to, and will and benefit from, these revised policies,

26    procedures and practices.

27        **B.      The Parties' Settlement Agreement Should Be Preliminarily Approved**

28    Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on court

11

approval, which is intended to ensure that the proposed settlement is "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2). As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

In making a final fairness determination, Rule 23 now requires courts to consider: (1) whether the class was adequately represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and other factors; and (4) whether the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, the Parties must "show that the court will likely be able to" approve their proposed settlement under these new Rule 23(e)(2) factors. Fed. R. Civ. P. 23(e)(1)(B); *see also In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510, at *4 (N.D. Cal. Mar. 28, 2019) (discussing new standard). Plaintiffs have met the standards of Rule 23(e).

1.    Plaintiffs and Their Counsel Have Adequately Represented the Class

In determining whether a class has been adequately represented, courts consider the same "adequacy of representation" questions that are relevant to class certification. *See MyFord Touch*, 2019 WL 1411510 at *8; *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6-7 (N.D. Cal. Mar. 29, 2019). In that context, courts ask whether (1) "named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 634 (9th Cir. 2018) (citation omitted); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); Fed. R. Civ. P. 23(a)(4). Adequate representation of counsel is generally presumed in the absence of contrary evidence. *Californians*

12

1    *for Disability Rights*, 249 F.R.D. at 349; *see* 1 William B. Rubenstein, *Newberg on Class Actions* §

2    3:55 (5th ed. Supp. 2019).

3        Here, neither Plaintiffs nor their counsel have any known conflicts with the proposed

4    Settlement Class.  Plaintiffs are directly affected by the policies and practices that they brought this

5    case to change, and they sought the same relief for themselves and the class:  changes to Defendants'

6    policies and practices regarding the identification, evaluation, eligibility determination, provision of

7    special education and related aids and services, and monitoring of student progress to determine

8    effectiveness of services provided and need for further evaluation and/or revisions to their IEPs or

9    504 Plans.  In addition, because Plaintiffs did not seek monetary damages in this case, this weighs

10    in favor of a finding of no conflict or collusion.  *See Am. Council of the Blind v. Astrue*, No. C05-

11    04696 WHA, 2008 WL 4279674, at *6 (N.D. Cal. Sept. 11, 2008) (holding that where Plaintiffs do

12    not seek monetary damages, "[t]he potential for any conflict or collusion is . . . minimal").

13        Furthermore, the Plaintiffs have vigorously pursued this outcome on behalf of the Settlement

14    Class:  they have knowledge of the case and of their duties as class representatives, have participated

15    actively in settlement negotiations, and are willing to continue to prosecute this action if necessary.

16    *See* Jacobson Decl., ¶ 7.  Similarly, Class Counsel has acted vigorously in this matter on behalf of

17    the class, through both litigation and arms-length settlement negotiations.  *See* Radke Decl. ¶¶ 4-6,

18    10; Center Decl., ¶ 7; Jacobson Decl., ¶ 6; *see also Hanlon*, 150 F.3d at 1021 (vigorous

19    representation measured by "competency of counsel and . . . an assessment of the rationale for not

20    pursuing further litigation").  The legal organizations and lawyers representing the Settlement

21    Plaintiffs are highly experienced and have served as counsel in numerous and varied disability rights

22    cases across the country including class actions.  Center Decl. ¶¶ 4-6.  Based on their experience

23    litigating disability rights cases and the claims in this matter, Class Counsel find that the policy and

24    practice changes and other provisions contained in the Parties' Settlement Agreement represent an

25    excellent outcome which will ensure that the Plaintiffs and the Settlement Class Members have

26    access to a free and appropriate public education including in the areas of identification, evaluation,

27    provision of services, and monitoring of progress for students with reading disabilities.  Attempting

28    to reach a resolution of this matter through additional litigation could have taken additional years

during which the Plaintiffs and the Settlement Class Members would not be guaranteed access to necessary educational services.  Moreover, due to the nature of litigation, there is no guarantee that continued prosecution of the case would have yielded a resolution better than or as favorable as that contained in the proposed Settlement Agreement.  For example, even if Plaintiffs were successful in proving their claims in litigation, a court order of injunctive relief would likely not allow for Plaintiffs' experts to be interictally involved in developing and negotiating a new legally compliant program, as they were through settlement process.  Thus, this Rule 23(e)(2) factor weighs in favor of approval.

> 2.    The Parties' Settlement Agreement is the Product of Arms-Length Negotiations

When class counsel is experienced and supports the settlement, and the agreement was reached after arm's-length negotiations, courts give a presumption of fairness to the settlement.  *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  The Parties' proposed Settlement Agreement is the product of arms-length negotiations, with direct input and guidance from Magistrate Judge Beeler during five settlement conferences over the course of two years   Radke Decl., ¶ 10.  Such negotiations weigh in favor of approval.  Fed. R. Civ. P. 23(e)(2)(B).  And, as the Advisory Committee has recognized, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests."  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2).  In addition to five settlement conferences, at the suggestion of the court-affiliated mediator, the Parties attended multiple in-person meetings with nationally recognized experts to further settlement negotiations.  Radke Decl., ¶ 11.  Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," courts routinely find that preliminary approval is appropriate.  *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

The Parties began settlement discussions in late 2017, and over the ensuing months the

14

Parties exchanged multiple letters concerning possible settlement.  Radke Decl., ¶ 3.  However, the Parties simultaneously prepared for trial and pursued necessary discovery, including through review of produced documents, written discovery responses, and a day-long 30(b)(6) deposition of Defendants' designee.  *Id.*, ¶ 4.  On March 26, 2019, the Parties conducted their final settlement conference.  *Id.*, ¶ 5.  The Parties were able to agree on many core substantive terms of a settlement pertaining to injunctive relief but could not reach agreement on certain other terms.  *Id.*  The Parties continued to engage in discovery over the subsequent months, but ultimately were able to reach agreement of final terms on or about December 17, 2019.  *Id.*, ¶ 6.  The Parties exchanged drafts of the Settlement Agreement and Literacy Improvement Program and engaged in numerous calls and correspondence over the next several months.  *Id.*  On August 28, 2020, the Parties appeared for a Case Management Conference before this Court, at which time the Court set December 11, 2020 as the date by which Plaintiffs must seek either class certification or preliminary approval of the settlement.  ECF 152.  In early October 2020, the Board approved the final terms of the Parties' settlement, and the parties proceeded to finalize the documents.  Radke Decl., ¶ 8.  On December 11, 2020, the Parties executed the Settlement Agreement.  *Id.*, ¶ 9.

3.    The Parties' Settlement Agreement Will Provide More-Than-Adequate Relief To Plaintiffs And The Class

In evaluating the substantive fairness of a proposed settlement, courts consider whether "the relief provided for the class is adequate," taking into account "the costs, risks, and delay of trial and appeal," "the terms of any proposed award of attorneys' fees," and other factors.  Fed. R. Civ. P. 23(e)(2)(C).  Here, Plaintiffs have achieved a very good result on behalf of themselves and the class, and all relevant factors weigh in favor of approval.

a.    *The Potential Costs, Risks, and Delays Associated With Trial and Appeal Weigh In Favor Of Approval*

In considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial."  *Hanlon*, 150 F.3d at 1026.

15

Plaintiffs are confident in the strength of their case.  However, Plaintiffs also acknowledge that a victory is not assured.  And, even if Plaintiffs had won a contested motion for class certification, prevailed on the merits, and fought off any appeals, that process would likely have taken years and cost hundreds of thousands of additional dollars in attorneys' fees and costs.  All the while, Plaintiffs and other students with reading disabilities would have been waiting for relief, some of whom would move on to high school and even graduate high school having never received the programs and services they need to read fluently.  Going even one year without appropriate programs and services can impact a young student for life.  Moreover, the end result of protracted litigation would have been unlikely to be considerably better than the terms that the Settlement Agreement and Literacy Improvement Program provide, as Plaintiffs have achieved the exact policy and practice changes they sought in bringing this litigation.  Indeed, the Literacy Improvement Program was originally developed by Plaintiffs' experts, who were able to give extensive input as to each aspect of the program throughout the negotiations and in settlement conferences, including details such as program goals, how to implement the program to achieve those goals, and even as to specific intensive, research-based reading interventions and services that should be used in the BUSD.  If Plaintiffs were successful in litigation and the Court ordered Defendants to develop such a program and begin to use research-based reading interventions, Plaintiffs' experts may not have been able to give such extensive input.

**b.    *The Terms of The Parties' Proposed Attorneys' Fee Award Also Weigh In Favor Of Approval***

In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount."[3] *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011).

Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' counsel at total of $350,000.  This term was negotiated after all substantive settlement terms pertaining to injunctive

---

[3] While such awards are not formally approved until the final approval hearing, class counsel must "include information about the fees they intend to request and their lodestar calculation in their motion for preliminary approval."  *See* ND Cal Guidance Section 6.

relief had been resolved, and the ultimate amount was only agreed to by both Parties after lengthy negotiations and a significant fee reduction from Plaintiffs' counsel. Radke Decl., ¶ 12. As detailed above, several counsel herein donated their time and have incurred great litigation expense that they are not seeking compensation for. And, for DREDF and JEL, the agreed-upon fee award represents between 15 and 18 percent of a lodestar of more than $2 million.

Where, as here, Plaintiffs have achieved an excellent result on behalf of the proposed Settlement Class—as discussed above—that fact weighs heavily in favor of finding that their fee award is reasonable. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (stating that the "most critical factor" to the reasonableness of an attorney fee award is "the degree of success obtained"). Thus, the Court should find that the terms of the Parties' proposed fee award weigh in favor of approval.

### 4.    The Parties' Settlement Agreement Treats All Class Members Equitably

Under the Parties' proposed settlement, Plaintiffs and all proposed class members will receive exactly the same relief. *See generally* Settlement Agreement. In addition, no incentive awards for named Plaintiffs are sought. Thus, because the Parties' Settlement Agreement treats Plaintiffs and all other "class members equitably relative to each other," the Court should find that this factor weighs in favor of preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(D).

### C.    The Parties' Proposed Form Of Notice Should Be Approved

The Court should approve the Parties' proposed form of notice to the Settlement Class (the "Proposed Notice," Settlement Agreement Ex. C). Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion. Fed. R. Civ. P. 23(c)(2)(a), (e)(1). Notice provided under Rule 23(e) must "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)). The "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C., v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tuscon Sch. Dist. No. 1*,

17

623 F.2d 1338, 1352 (9th Cir. 1980)).

The Proposed Notice meets this standard and complies with due process because it is reasonably calculated to adequately apprise Settlement Class Members of (i) the pending lawsuit, (ii) the proposed Settlement, and (iii) their rights, including the right to either participate in the Settlement, exclude themselves from the Settlement, or object to the Settlement.  In addition, the proposed form of notice complies with the ND Cal Guidance.

Specifically, the Parties have agreed on a notice distribution plan that will effectively inform the class about the settlement and their right to object.  The Proposed Notice includes:  (1) a statement of the terms of the settlement and claims released by the Class; (2) the date of the hearing on the Final Approval of the Settlement Agreement with a clear statement that the date may change without further notice to the class; (3) a summary of rights, including the right to comment upon, or object to the Settlement and the deadline for submitting objections; and (4) contact information for class counsel.  Per the Settlement Agreement, the Notice shall be published as follows:

- DREDF and Defendants shall each post on their respective websites a copy of the Class Notice until the deadline for submitting objections has passed.
- Defendants shall provide a copy of the Class Notice to all enrolled students and/or their parents or guardians through email or its online portal(s), and shall post the Class Notice on the BUSD website including in District News and on the Special Education page.

The Settlement Agreement requires that, within 14 days after the Court's Preliminary Approval of the Class Settlement and the Class Notice, the Parties, through their respective counsel of record, shall provide a declaration to the Court attesting that they each disseminated the Notice.  Settt. Agmt. § 6.b.iii.  In addition, Defendants will comply with all applicable notice provisions of the Class Action Fairness Act by February 13, 2020.  28 U.S.C. §§ 1715(a, b, d).

The Notice also makes clear that any Settlement Class Member shall be entitled to submit an objection to the approval of the Class Settlement.  To do so, the objection must be in writing, describe the bases of the objection, and be post-marked in accordance with the deadline specified in the Preliminary Approval Order, and be mailed to Class Counsel and the Court with a postmarked by a date to be set by the Court (and proposed by the Parties to be 60 days from the date of the

18

Preliminary Approval Order).

Accordingly, based on the foregoing, the Parties' proposed form of notice should be approved.

### D.    The Fairness Hearing

Following this motion and the Court's order regarding this motion, the next steps in the settlement approval process are to schedule a Final Approval Hearing, notify Settlement Class Members of the Settlement and hearing, and provide Settlement Class Members with the opportunity to submit Claim Forms and object, opt out, or comment on the Settlement.  As reflected in their Proposed Order Granting Preliminary Approval (Settlement Agreement, Ex. B), the parties propose the following schedule:

| Event | Proposed Deadline |
|---|---|
| Declaration of dissemination of Class Notice | 14 days from Preliminary Approval Order |
| Objections to Settlement | 60 days from Preliminary Approval Order |
| Notice of Intention to Appear by Objecting Counsel | 60 days from Preliminary Approval Order |
| Final Approval / Fairness Hearing | 120 days from Preliminary Approval Order |
| Parties' Submissions Supporting Final Approval | 14 days before Final Approval / Fairness Hearing |

## IV.    CONCLUSION

In consideration of the above, Plaintiffs request that this Court enter an order (1) granting preliminary approval of the Settlement Agreement; (2) provisionally certifying the proposed Settlement Class and appointing Plaintiffs' attorneys as class counsel (to be vacated and without effect if the Parties' Settlement Agreement is not ultimately approved); (3) approving the Parties' proposed form of notice and directing notice to the class; and (4) setting a final approval motion deadline, a Fairness Hearing, and other associated deadlines as described in the proposed order filed concurrently with this motion.

DATED:  December 11, 2020                Respectfully submitted,

                                    By:  /s/ Claudia Center
                                         CLAUDIA CENTER (SBN 158255)
                                         ccenter@dredf.org
                                         MALHAR SHAH (SBN 318588)
                                         mshah@dredf.org
                                         **DISABILITY RIGHTS EDUCATION
                                         AND DEFENSE FUND, INC.**
                                         Ed Roberts Campus
                                         3075 Adeline Street, Suite 210
                                         Berkeley, CA 94703
                                         Tel: +1.510.644.2555
                                         Fax: +1.510.841.8645


                                    By:  /s/ Deborah Jacobson
                                         DEBORAH JACOBSON (SBN 278104)
                                         djacobson@jacobsoneducationlaw.com
                                         **JACOBSON EDUCATION LAW, INC.**
                                         1919 Addison Street, Suite 105
                                         Berkeley, CA 94704
                                         Tel: +1.510.647.8125
                                         Fax: +1.510.280.9340



                                    By:  /s/    Brendan E. Radke
                                         BRENDAN E. RADKE (SBN 275284)
                                         bradke@goodwinlaw.com
                                         **GOODWIN PROCTER LLP**
                                         Three Embarcadero Center
                                         San Francisco, CA 94111
                                         Tel: +1.415.733.6000
                                         Fax: +1.415.677.9041



                                    By:  /s/    Shane Brun
                                         SHANE BRUN (SBN 179079)
                                         sbrun@kslaw.com
                                         **KING & SPALDING LLP**
                                         601 S. California Ave.
                                         Suite 100
                                         Palo Alto, CA 94304
                                         Telephone: (415) 318-1245
                                         Fax: (415) 318-1200

                                         *Attorneys for Plaintiffs*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
                                              CASE NO. 4:17-CV-02510-JST

**ATTORNEY ATTESTATION**

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).


    /s/ *Brendan E. Radke*
Brendan R. Radke

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

CASE NO. 4:17-CV-02510-JST

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

4

United States District Court for the Northern District of California by using the CM/ECF system

5

on December 11, 2020. I further certify that all participants in the case are registered CM/ECF

6

users and that service will be accomplished by the CM/ECF system.

7

I certify under penalty of perjury that the foregoing is true and correct. Executed on

8

December 11, 2020, in San Francisco, California.

9

/s/ *Brendan E. Radke*
Brendan R. Radke

10

11

2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

CASE NO. 4:17-CV-02510-JST