1  CLAUDIA CENTER (SBN 158255)
   *ccenter@dredf.org*
2  MALHAR SHAH (SBN 318588)
   *mshah@dredf.org*
3  **DISABILITY RIGHTS EDUCATION**
      **AND DEFENSE FUND, INC.**
4  Ed Roberts Campus
   3075 Adeline Street, Suite 210
5  Berkeley, CA 94703
   Tel: +1.510.644.2555
6  Fax: +1.510.841.8645

7  [ADDITIONAL COUNSEL AND PARTIES LISTED ON NEXT PAGE]

8  *Attorneys for Plaintiffs*

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11  STUDENT A, by and through PARENT A, her          Case No. 4:17-cv-02510-JST
    guardian; STUDENT B, by and through
2   PARENT B, his guardian; STUDENT C, by            **PLAINTIFFS' NOTICE OF**
    and through PARENT C, his guardian; and          **UNOPPOSED MOTION AND**
13  STUDENT D, by and through PARENT D, her          **UNOPPOSED MOTION FOR FINAL**
    guardian, each one individually and on behalf    **APPROVAL OF CLASS SETTLEMENT**
14  of all other similarly situated children,
                                                     [Memorandum of Points and Authorities
15                                  Plaintiffs,       included herein]

16          v.

17  THE BERKELEY UNIFIED SCHOOL                       **Hearing date: November 4, 2021**
    DISTRICT and THE BOARD OF
18  EDUCATION OF THE BERKELEY UNIFIED                 **Time: 2:00 p.m.**
    SCHOOL DISTRICT,
19                                                    **Judge: Hon. John S. Tigar**
                                    Defendants.
20

21

22

23

24

25

26

27

28

---

DEBORAH JACOBSON (SBN 278104)
*djacobson@jacobsoneducationlaw.com*
**JACOBSON EDUCATION LAW, INC.**
1919 Addison Street, Suite 105
Berkeley, CA 94704
Tel: +1.510.647.8125
Fax: +1.510.280.9340

SHANE BRUN (SBN 179079)
*sbrun@kslaw.com*
GEORGE R. MORRIS (SBN 249930)
**KING & SPALDING LLP**
601 S. California Ave.
Suite 100
Palo Alto, CA 94304
Telephone: (415) 318-1245
Fax: (415) 318-1200

*Attorneys for Plaintiffs*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 2:00 pm on November 4, 2021, or as soon thereafter as the matter may be heard, Plaintiffs Student A, by and through Parent A, her guardian; Student B, by and through Parent B, his guardian; Student C, by and through Parent C, his guardian; and Student D, by and through Parent D, her guardian, each one individually and on behalf of themselves (collectively, "Plaintiffs") will move the Court for entry of an order: (1) granting final approval of their proposed class-wide settlement (the "Class Action Settlement"); and (2) confirming the certification of the Settlement Class and appointment of Settlement Class Counsel and the Settlement Class Representatives.[1]

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the previously filed and concurrently filed declarations and exhibits, all pleadings and papers on file in this action, and any oral argument this Court permits.

DATED: October 21, 2021                    Respectfully submitted,

By: /s/ Claudia Center
CLAUDIA CENTER (SBN 158255)
ccenter@dredf.org
**DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.**

By: /s/ Deborah Jacobson
DEBORAH JACOBSON (SBN 278104)
djacobson@jacobsoneducationlaw.com
**JACOBSON EDUCATION LAW, INC.**

By: /s/    Shane Brun
SHANE BRUN (SBN 179079)
sbrun@kslaw.com
**KING & SPALDING LLP**

*Attorneys for Plaintiffs*

---

[1] Plaintiffs previously filed their motion for approval of attorneys' fees (ECF No. 160) which Plaintiffs understands will also be decided at the November 4, 2021 hearing.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As set forth in Plaintiff's motion for preliminary approval, on May 2, 2017, Plaintiffs filed this Class Action Civil Rights Complaint for Declaratory and Injunctive Relief ("the Complaint," ECF No. 1) against Defendants in the United States District Court for the Northern District of California, Case No. 3:17-cv-02510 ("the Action").   The Complaint alleges *inter alia* that, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 ("Section 504"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (amended by Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108446, Title I) ("IDEA"), California Education Code Section 56000 *et seq.* ("Section 56000") and applicable federal regulations, Defendants maintain policies and practices that discriminate against students with and suspected to have reading disorders and deprive them of a Free Appropriate Education ("FAPE") in the Least Restrictive Environment ("LRE").   The Complaint further alleges that Defendants routinely fail to comply with the requirements of IDEA, 20 U.S.C. §§ 1400 *et seq.*, and its implementing regulations; Section 504, 29 U.S.C. § 794, and its implementing regulations; Title II of the ADA, 42 U.S.C. §§ 12132 *et seq.*, and its implementing regulations; and California Education Code Sections 56000 *et seq.* and its implementing regulations.   Defendants deny that there is any factual or legal basis for the Plaintiffs' claims.

This case has been thoroughly litigated.   On June 19, 2017, Defendants moved to dismiss the Complaint, alleging failure to exhaust administrative remedies and a lack of cognizable claims against the individual defendants.   ECF No. 46 ("Motion to Dismiss").   Plaintiffs opposed the Motion to Dismiss, and on October 12, 2017, the Court denied the Motion to Dismiss as to the District and the Board but dismissed the individual defendants from the case.   ECF No. 75. Defendants answered the Complaint on November 13, 2017.   ECF No. 85.   The parties commenced discovery, and in late 2017 initiated settlement discussions.   *See* ECF No. 153 (attachment #5 (Radke Decl., ¶ 3)). The parties participated in two ADR Phone Conferences, ECF Nos. 60, 74, 77,

and five settlement conferences with the Hon. Laurel Beeler. ECF Nos. 86, 106, 109, 113, 114. While the parties agreed to stay discovery during the initial period of their settlement efforts, they later engaged in significant discovery efforts, including written discovery, the depositions of each Plaintiff parent, and eight Defendant witnesses (Donald Evans, Jan Hamilton, Susan Coto McKenna, Pasqual Scuderi, Julia Nicole Hart, Flor Anne Palma, Lisa Graham, and Maggie Riddle). *See* ECF No. 153 (attachment #5, (Radke Decl., ¶ 4)).

After extensive, arms-length negotiations, including the aforementioned five settlement conferences and discovery, the Parties reached a proposed class-wide settlement in the Fall of 2020. The Parties' proposed Settlement Agreement incorporates a comprehensive "Literacy Improvement Program," to be implemented over three to five years. *See* ECF 153 (attachment #6 (Exhibit A to Settl. Agmt)). The Literacy Improvement Program was mostly developed, drafted and negotiated by the parties with the direct involvement of Magistrate Judge Beeler during the parties' multiple settlement conferences. The Literacy Improvement Program requires that Defendant BUSD work collaboratively with nationally recognized outside consultants to improve reading and language arts achievement for all students, especially those with or at risk for reading disabilities. Its components include research-based reading interventions for students with reading disabilities, and universal screening and progress monitoring to identify students at risk of reading disabilities. The Literacy Improvement Program also requires that the District adopt a "reading data system" and "reading testing system" for use in Grades K-8 to measure students' reading fluency, and their progress toward academic goals.

Furthermore, the Settlement Agreement requires that Defendants retain an Outside Monitor who will receive and submit progress reports regarding Defendants' compliance with the terms of the Settlement Agreement, including the Literacy Improvement Program. *See* ECF 153 (attachment #6 (Settl. Agmt. at ¶¶ 2(c) and 4(a) and (b))). The Settlement Agreement releases claims by the Plaintiffs and Settlement Class Members and includes a payment of attorneys' fees and costs to Plaintiffs' counsel. *Id.* at ¶¶ 8 and 10. The Parties believe that the Settlement Agreement, together with the Literacy Improvement Program reflects a reasonable compromise between the Parties

considering the expense, delay, and uncertainty of further litigation.

On December 11, 2020, Plaintiffs filed their unopposed motion for Preliminary Approval of Class Action Settlement. ECF No. 153. On July 8, 2021, the Court issued an order in which it (1) conditionally certified the proposed class for settlement purposes only; (2) preliminarily approved the settlement agreement and notice plan; and (3) preliminarily appointed Disability Rights Education and Defense Fund, Inc. ("DREDF"), including but not limited to Claudia Center of DREDF; Deborah Jacobson of Jacobson Education Law, Inc.; and King & Spalding LLP ("King & Spalding"), including but not limited to Shane Brun and George Morris of King & Spalding, as class counsel, and Plaintiffs as class representatives. ECF No. 156. In that order, the Court required Plaintiffs to correct certain errors in the proposed notice to the settlement class and to file a revised proposed notice for the Court's review, as well as a redline showing any changes made to the proposed notice. *Id.* at 4.

On July 15, 2021, Plaintiffs provided a revised proposed notice which corrected the errors discussed in the Court's prior order (*see* ECF No. 157) and the Court approved the revised proposed notice subject to one other change required by the Court. ECF No. 158. The Court also set the dates for: a) a declaration of dissemination of class notice; b) class counsel to file a motion for attorneys' fees; c) class members to mail objections or requests for exclusion; d) class counsel to file a motion for final approval; and e) a final approval hearing. *Id.*

On August 2, 2021, Plaintiffs filed a declaration of dissemination of class notice (ECF No. 159) and Plaintiffs filed their motion for attorney fees on August 27, 2021. ECF No. 160. October 1, 2021 was the deadline for class members to mail objections or requests for exclusion. *See* ECF No. 158. Plaintiffs did not receive any objections on or before October 1, 2021. *See* Declaration of Marlar Shah in Support of Motion for Final Approval of Class Settlement ("Shah Decl."), ¶ 3.

Accordingly, in accordance with the Court's July 16, 2021 Order (ECF No. 158), Plaintiffs now move for an order granting final approval of the Class Action Settlement and confirming the certification of the Settlement Class and appointment of Settlement Class Counsel and the Settlement Class Representatives.

Plaintiffs' Unopposed Motion for Final Approval

## II.    SETTLEMENT TERMS

As set forth above, the terms of the settlement are memorialized in the parties' Settlement Agreement and set forth below.

### A.    The Proposed Settlement Class

The proposed Settlement Class consists of: "All current and future BUSD students who have, may have or are suspected of having a reading disability, such as dyslexia, within the meaning of IDEA, Section 504, the ADA and/or Section 56000."

This proposed class is a simplified version of the class definitions set out in the Complaint, which delineated four groups of BUSD students "who have or may have disabilities because of reading disorders such as dyslexia within the meaning of IDEA/related state laws and/or Section 504/ADA and who are or may be subject to BUSD's policies, procedures and practices concerning" (1) identification of students, (2) evaluations for determining eligibility, (3) the provision of special education services, and (4) the monitoring of student progress.  Complaint at ¶¶ 156, 157, 158, 159. While worded differently, the definition set out in the proposed Settlement Agreement does not differ materially from the proposed class set out in Plaintiffs' Complaint and encompasses the same group of students described in the Complaint.  The proposed Class was preliminarily approved by the Court for settlement purposes only.  ECF No. 156.

### B.    Class Counsel

"Class Counsel" was preliminarily approved to be DREDF, including but not limited to Claudia Center of DREDF; Deborah Jacobson of Jacobson Education Law, Inc.; and King & Spalding LLP, including but not limited to Shane Brun and George Morris of King & Spalding. ECF No. 156.

### C.    Relief

The relief granted to the Settlement Class is: the implementation, monitoring and continuation of a comprehensive Literacy Improvement Program in consultation with nationally recognized Outside Consultants over three to five years; monitoring by an impartial Outside Monitor who will receive and submit progress reports on the implementation of the Settlement Agreement

5

1   including the Literacy Improvement Program; and the payment of $350,000 in attorneys' fees and

2   costs, described in more detail below.

3       **D.      Settlement Administration**

4       Plaintiffs' Complaint sought injunctive and equitable relief only, and the proposed

5   Settlement Agreement provides only non-monetary relief.  Given the nature of the Settlement

6   Agreement here, a settlement administrator is not necessary and will not be utilized.   This was

7   recognized and approved by the Court.  *See* ECF 156.  Instead, Defendants are required to retain an

8   impartial Outside Monitor to monitor the implementation of the Settlement Agreement.  *Id.*

9       **E.      Attorney Fees**

10      Per the Settlement Agreement, Defendants agree to pay Class Counsel the maximum total

11  sum of $350,000 for attorneys' fees and costs as follows:

12      a.      The total sum of $175,000.00 shall be paid to the "Disability Rights Education and

13      Defense Fund," co-counsel for Plaintiffs, to be paid in three (3) installments as follows:

14          i.      First installment in the amount of $50,000 shall be due within 45 days of the

15          Effective Date;

16          ii.     Second installment in the amount of $62,500 shall be due within 180 days of

17          the Effective Date; and

18          iii.    Third installment in the amount of $62,500 shall be due within one (1) year

19          of the Effective Date.

20      b.      The total sum of $175,000.00 shall be paid to "Jacobson Education Law," co-counsel

21      for Plaintiffs, to be paid in three (3) installments as follows:

22          i.      First installment in the amount of $50,000 shall be due within 45 days of the

23          Effective Date;

24          ii.     Second installment in the amount of $62,500 shall be due within 180 days of

25          the Effective Date; and

26          iii.    Third installment in the amount of $62,500 shall be due within one (1) year

27          of the Effective Date.

28

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL

Plaintiff's filed its motion for attorneys' fees on August 27, 2021 seeking the fees set forth above.  ECF No. 160.  Defendants filed a non-opposition on September 10, 2021.  ECF No. 161.

**F.      Release**

The term "Released Parties" in the Settlement Agreement covers the Defendants and their respective past, present and future superintendents, associate superintendents, officers, directors, board members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, insurers, reinsurers, predecessors, and successors in interest.

The "Released Injunctive Claims" are any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for any and all claims for injunctive, equitable, or declaratory relief that are the subject of, included within, and/or arise from the Action, including such claims which could have been brought as educationally-based claims under the IDEA, Section 504, ADA, and/or Section 56000, arising from May 2, 2017, through the Term of the Settlement Agreement.

The releases encompassed by this Settlement Agreement shall not bar any Named Plaintiff or Settlement Class Member from pursuing an individual administrative or judicial action claiming that, as to that Named Plaintiff or Settlement Class Member alone, the individual is not receiving a FAPE in the LRE to which the individual is entitled under IDEA, Section 504, the ADA, or California law.

The claims released by the Settlement Agreement (education-based claims under the IDEA, Section 504, the ADA, and California Education Code Section 56000) correspond to the causes of action brought in Plaintiffs' Complaint.  There are no differences.

**III.    ARGUMENT**

**A.      <u>The Settlement Class Should Be Certified.</u>**

In its Preliminary Settlement Order, the Court analyzed each of the relevant factors under Rule 23(a) and (b)(3) in preliminarily deciding, for settlement purposes only, "this action satisfies the applicable prerequisites for class action treatment under Rule 23."  ECF No. 156.  This remains true.  Class certification is appropriate where: "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). All of these factors are met here, and nothing has changed since the Court's preliminary approval to hold otherwise.

### 1. The Settlement Class Is Sufficiently Numerous.

A proposed class is sufficiently numerous if joining its members as individual plaintiffs would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). The numerosity requirement is "not tied to any fixed numerical threshold"—courts generally find that classes with 40 or more members satisfy it, but even much smaller classes can suffice. *See Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010) (discussing standard, and affirming certification of 20-member class). When "general knowledge and common sense indicate that" a class is large, numerosity is met. *In re Abbott Laboratories Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. Jun. 11, 2007).

The Settlement Class satisfies this requirement. Reading disorders affect a significant portion of the BUSD student population, the prevalence of which is estimated to be between 5% and 17%.[2] At present, BUSD includes approximately 10,000 students in grades K through 12. Accordingly, Defendants' deficient policies and practices impact many hundreds of current and future BUSD students. *See* ECF No. 1 at ¶ 161; *Sueoka v. U.S.*, 101 Fed. Appx. 649, 653 (9th Cir. 2004) ("Because plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members . . . is sufficient to make joinder impracticable.").

### 2. The Settlement Class Satisfies Commonality.

The "commonality" requirement of Rule 23(a)(2) is satisfied if the claims of Plaintiffs and the proposed class "depend upon a common contention that is capable of class-wide resolution—

---

[2] Jack M. Fletcher, Dyslexia: The Evolution of a Scientific Concept, 15 J. Int'l Neuropsychological Soc'y 501, 501 (2009).

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This does not "mean that *every* question of law or fact must be common to the class." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original) (citations omitted). The "commonality requirement has been 'construed permissively,' and its requirements deemed 'minimal.'" *Estrella v. Freedom Fin. Network*, No. C 09-03156 SI, 2010 WL 2231790, at *7 (N.D. Cal. June 2, 2010). "[F]or purposes of Rule 23(a)(2), even a single common question" can establish commonality. *Wal-Mart*, 564 U.S. at 359 (citation and internal quotation marks omitted); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, Plaintiffs alleged that BUSD's policies, procedures and practices related to identification, evaluation, eligibility determination, provision of special education and related aids and services, and monitoring of student progress to determine effectiveness of services provided and need for further evaluation and/or revisions to their IEPs or 504 Plans, violate IDEA and related state laws and/or Section 504/ADA. *See* ECF No. 1 at ¶ 162. These challenged policies, procedures and practices apply to every member of the proposed class. The legality of these policies and practices is a question "capable of classwide resolution." *See Wal-Mart*, 564 U.S. at 350. Where a lawsuit seeks a determination regarding "systemic policies and practices" that affect all of the putative class members—as in this case—Rule 23(a)'s commonality requirement is met. *See Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014); *see also B.K. by her next friend Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (finding commonality despite possible differences among class members, and holding that challenge to systemic "policies and practices [was] the 'glue' that h[eld] together the putative class"); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (finding commonality satisfied where plaintiffs challenged "uniform policies and practices of failing to ensure" accessibility for people with disabilities); *D.L. v. District of Columbia,* 860 F.3d 713, 724 (D.C. Cir. 2017) (finding commonality where plaintiffs identified a common harm—"denial of a FAPE due to a deficient and poorly implemented [district-wide] Child Find policy."). Moreover, the relief achieved will redound to every member of the Settlement Class.

1    *See* § II(A), above.

2              3.       Plaintiffs' Claims Are Typical of the Settlement Class.

3          Class certification is proper where "the claims or defenses of the representative parties are

4    typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under [Rule 23(a)(3)'s]

5    permissive standards, representative claims are 'typical' if they are reasonably coextensive with

6    those of absent class members; they need not be substantially identical."  *Parsons*, 754 F.3d at 685

7    (quoting *Hanlon*, 150 F.3d at 1020).  "The requirement of typicality is not primarily concerned with

8    whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for

9    typicality if the plaintiff endured a course of conduct directed against the class."  *Just Film, Inc. v.*

10   *Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497,

11   508 (9th Cir. 1992) ("Typicality refers to the nature of the claim or defense of the class

12   representative, and not to the specific facts from which it arose or the relief sought") (citation

13   omitted).  Because typicality overlaps with commonality, a finding of commonality usually supports

14   a finding of typicality.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)

15   (commonality and typicality requirements frequently "merge").

16          Here, the claims of the named Plaintiffs are typical of the claims of the Class, in that each

17   named Plaintiff is an individual with a reading disorder, such as dyslexia, that qualifies him or her

18   as eligible for special education and related aids and services under IDEA and related state laws

19   and/or Section 504/ADA, but named Plaintiffs claim that they: (1) were not timely identified

20   pursuant to Defendants' Child Find Duty; (2) have not received a timely and appropriate evaluation

21   and eligibility determination; (3) have not received timely and appropriate provision of special

22   education and related aids and services, including an adequate IEP or 504 Plan; and (4) have not

23   received appropriate monitoring of their progress or review of special education and related aids

24   and services documented in their IEP or 504 Plan.  *See* ECF No. 1 at ¶ 163; *see also Just Film*, 847

25   F.3d at 1117-18 (plaintiffs' claims were typical because her injuries "stem[med] from the same

26   scheme" and she could prove "nature" of the violation "for the benefit of all class members"); *Baby*

27   *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (Where an action challenges a policy or practice, "the

28

                                            10

named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.").  The legal theories that Plaintiffs would have relied on to redress this harm apply equally to each member of the proposed Settlement Class, and the relief Plaintiffs have achieved will benefit that class as a whole.  *See* § II(A), above.

### 4.   Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class.

For the reasons discussed in § II(B)(1) below, the Court should find that Plaintiffs and their counsel "will fairly and adequately protect the interests of the class," as Rule 23 requires.  This is particularly true given that Plaintiffs do not have any interests antagonistic to the members of any Class, the relief sought by Plaintiffs will inure benefit to the members of the Class, and Plaintiffs are represented by counsel who are experienced, skilled, and knowledgeable about civil rights litigation, disability rights, and class action litigation.  *See* ECF No. 1 at ¶ 164.

### 5.   The Proposed Class Meets the Requirements of Rule 23(b)(2)

Rule 23(b)(2) is designed to facilitate civil rights class actions.  *Parsons*, 754 F.3d at 686. Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Id.* at 688 (certifying (b)(2) class of prisoners challenging defendant's centralized policies and practices of "uniform and statewide application" even where those practices "may not affect every member of the proposed class . . . in exactly the same way"); Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) is "'almost automatically satisfied in actions primarily seeking injunctive relief.'"  *Gray*, 279 F.R.D. at 520 (quoting *Baby Neal*, 43 F.3d at 58; *see also Wal-Mart*, 564 U.S. at 362 ("[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture.") (internal quotation marks omitted).  "Cases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)."  *Californians for Disability Rights, Inc. v. California Dep't*

1  *of Transp.*, 249 F.R.D. 334, 345  (N.D. Cal. 2008) (certifying (b)(2) class challenging transportation

2  agency's deficient design guidelines and inaccessible facilities) (collecting cases).

3      Here, certifying the proposed Settlement Class under Rule 23(b)(2) is appropriate because

4  the Settlement Agreement and accompanying Literacy Improvement Program will address the

5  deficiencies of the policies, procedures and practices alleged in the Complaint and Plaintiffs and all

6  members of the proposed class will be subject to, and will benefit from, these revised policies,

7  procedures and practices.

8      **B.    The Parties' Settlement is Fair, Reasonable and Adequate and Should be**

9          **Approved.**

10      In preliminarily approving the Settlement, this Court analyzed all factors under recently

11  amended Rule 23(e)(2) and concluded that "the terms and conditions set forth in the parties'

12  settlement agreement, is fundamentally fair, reasonable, adequate, and in the best interest of the

13  settlement class members." Dkt. No. 156.  Nothing has changed since then. All applicable factors

14  weigh in favor of final approval.

15      Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on court

16  approval, which is intended to ensure that the proposed settlement is "fair, adequate, and free from

17  collusion."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation and internal

18  quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2).  As a matter of "express public policy,"

19  federal courts favor and encourage settlements, particularly in class actions, where the costs, delays,

20  and risks of continued litigation might otherwise overwhelm any potential benefit the class could

21  hope to obtain.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the

22  "strong judicial policy that favors settlements, particularly where complex class action litigation is

23  concerned").

24      In making a final fairness determination, Rule 23 now requires courts to consider: (1)

25  whether the class was adequately represented; (2) whether the proposed settlement was negotiated

26  at arm's length; (3) whether the relief provided for the class is adequate, taking into account the

27  costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and

28

1    other factors; and (4) whether the proposal treats class members equitably relative to one another.

2    Fed. R. Civ. P. 23(e)(2).  Plaintiffs have met the standards of Rule 23(e) warranting final approval

3    of the Class Action Settlement.

4                   1.      Plaintiffs and Their Counsel Have and Continue to Adequately Represent

5                           the Class.

6            In determining whether a class has been adequately represented, courts consider the same

7    "adequacy of representation" questions that are relevant to class certification.  *See MyFord Touch*,

8    2019 WL 1411510 at \*8; *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL

9    1437101, at \*6-7 (N.D. Cal. Mar. 29, 2019).  In that context, courts ask whether 1) "named plaintiffs

10   and their counsel have any conflicts of interest with other class members" and 2) whether "the named

11   plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."  *Sali v.*

12   *Corona Reg'l Med. Ctr.*, 889 F.3d 623, 634 (9th Cir. 2018) (citation omitted); *Hanlon v. Chrysler*

13   *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); Fed. R. Civ. P. 23(a)(4).  Adequate representation of

14   counsel is generally presumed in the absence of contrary evidence.  *Californians for Disability*

15   *Rights*, 249 F.R.D. at 349; *see* William B. Rubenstein, *Newberg on Class Actions* § 3:55 (5th ed.

16   Supp. 2019).

17           Here, neither Plaintiffs nor their counsel have any known conflicts with the proposed class.

18   Plaintiffs are directly affected by the policies and practices that they brought this case to change,

19   and they sought the same relief for themselves and the class:  changes to Defendants' policies and

20   practices regarding the identification, evaluation, eligibility determination, provision of special

21   education and related aids and services, and monitoring of student progress to determine

22   effectiveness of services provided and need for further evaluation and/or revisions to their IEPs or

23   504 Plans.  In addition, because Plaintiffs did not seek monetary damages in this case, this weighs

24   in favor of a finding of no conflict or collusion.  *See Am. Council of the Blind v. Astrue*, No. C05-

25   04696 WHA, 2008 WL 4279674, at \*6 (N.D. Cal. Sept. 11, 2008) (holding that where Plaintiffs do

26   not seek monetary damages, "[t]he potential for any conflict or collusion is . . . minimal").

27           Furthermore, the Plaintiffs have vigorously pursued this outcome on behalf of the Settlement

28

Class: they have knowledge of the case and of their duties as class representatives, have participated actively in settlement negotiations, and are willing to continue to prosecute this action if necessary. *See* ECF 153 (attachment # 3 (Jacobson Decl., ¶ 7)). Similarly, Class Counsel has acted vigorously in this matter on behalf of the class, through both litigation and arms-length settlement negotiations. *See id*. (attachment # 5 (Radke Decl. ¶¶ 4-6, 10)); (attachment # 1, Center Decl., ¶ 7)); (attachment # 3 (Jacobson Decl., ¶ 6)); *see also Hanlon*, 150 F.3d at 1021 (vigorous representation measured by "competency of counsel and . . . an assessment of the rationale for not pursuing further litigation"). The legal organizations and lawyers representing the Settlement Plaintiffs are highly experienced and have served as counsel in numerous and varied disability rights cases across the country including class actions. ECF No. 153 (attachment # 1, Center Decl., ¶¶ 4-6)). Based on their experience litigating disability rights cases and the claims in this matter, Class Counsel find that the policy and practice changes and other provisions contained in the Parties' Settlement Agreement represent an excellent outcome which will ensure that the Plaintiffs and the Settlement Class Members have access to a free and appropriate public education including in the areas of identification, evaluation, provision of services, and monitoring of progress for students with reading disabilities. Attempting to reach a resolution of this matter through additional litigation could have taken additional years during which the Plaintiffs and the Settlement Class Members would not be guaranteed access to necessary educational services. Moreover, due to the nature of litigation, there is no guarantee that continued prosecution of the case would have yielded a resolution better than or as favorable as that contained in the proposed Settlement Agreement. For example, even if Plaintiffs were successful in proving their claims in litigation, a court order of injunctive relief would likely not allow for Plaintiffs' experts to be interically involved in developing and negotiating a new legally compliant program, as they were through settlement process. Thus, this Rule 23(e)(2) factor weighs in favor of approval.

2.    The Parties' Settlement Agreement is the Product of Arm's-Length Negotiations.

When class counsel is experienced and supports the settlement, and the agreement was

reached after arm's-length negotiations, courts give a presumption of fairness to the settlement.  *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  The Parties' proposed Settlement Agreement is the product of arm's-length negotiations, with direct input and guidance from Magistrate Judge Beeler during five settlement conferences over the course of two years.  *See* ECF No. 153 (attachment #5, (Radke Decl., ¶ 10)).  Such negotiations weigh in favor of approval.  Fed. R. Civ. P. 23(e)(2)(B).  And, as the Advisory Committee has recognized, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests." Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2).  In addition to five settlement conferences, at the suggestion of the court-affiliated mediator, the Parties attended multiple in-person meetings with nationally recognized experts to further settlement negotiations.  *Id.*, (Radke Decl., ¶ 11)).  Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," courts routinely find that preliminary approval is appropriate.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

The Parties began settlement discussions in late 2017, and over the ensuing months the Parties exchanged multiple letters concerning possible settlement.  *See* ECF No. 153 (attachment #5, (Radke Decl., ¶ 3)). However, the Parties simultaneously prepared for trial and pursued necessary discovery, including through review of produced documents, written discovery responses, and a day-long 30(b)(6) deposition of Defendants' designee.  *Id.*, (Radke Decl., ¶ 4).  On March 26, 2019, the Parties conducted their final settlement conference.  *Id.*, (Radke Decl., ¶ 5).  The Parties were able to agree on many core substantive terms of a settlement pertaining to injunctive relief but could not reach agreement on certain other terms.  *Id.*  The Parties continued to engage in discovery over the subsequent months, but ultimately were able to reach agreement of final terms on or about December 17, 2019. *Id.*, (Radke Decl., ¶ 6). The Parties exchanged drafts of the Settlement Agreement and Literacy Improvement Program and engaged in numerous calls and correspondence

15

over the next several months.  *Id.*  On August 28, 2020, the Parties appeared for a Case Management Conference before this Court, at which time the Court set December 11, 2020 as the date by which Plaintiffs must seek either class certification or preliminary approval of the settlement.  ECF No. 152; ECF No. 153 (attachment #5, (Radke Decl., ¶ 7).  In early October 2020, the Board approved the final terms of the Parties' settlement, and the parties proceeded to finalize the documents.  *Id.*, (Radke Decl., ¶ 8).  On December 11, 2020, the Parties executed the Settlement Agreement.  *Id.*, (Radke Decl., ¶ 9).

3.     <u>The Parties' Settlement Agreement Will Provide More-Than-Adequate Relief To Plaintiffs And The Class.</u>

In evaluating the substantive fairness of a proposed settlement, courts consider whether "the relief provided for the class is adequate," taking into account "the costs, risks, and delay of trial and appeal," "the terms of any proposed award of attorneys' fees," and other factors.  Fed. R. Civ. P. 23(e)(2)(C).  Here, Plaintiffs have achieved a very good result on behalf of themselves and the class, and all relevant factors weigh in favor of final approval.

*a.     The Potential Costs, Risks, and Delays Associated With Trial and Appeal Weigh In Favor Of Approval.*

In considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026.

Plaintiffs are confident in the strength of their case.  However, Plaintiffs also acknowledge that a victory is not assured.  And, even if Plaintiffs had won a contested motion for class certification, prevailed on the merits, and fought off any appeals, that process would likely have taken years and cost hundreds of thousands of additional dollars in attorneys' fees and costs.  All the while, Plaintiffs and other students with reading disabilities would have been waiting for relief, some of whom would move on to high school and even graduate high school having never received the programs and services they need to read fluently.  Going even one year without appropriate

16

programs and services can impact a young student for life.  Moreover, the end result of protracted litigation would have been unlikely to be considerably better than the terms that the Settlement Agreement and Literacy Improvement Program provide, as Plaintiffs have achieved the exact policy and practice changes they sought in bringing this litigation.  Indeed, the Literacy Improvement Program was originally developed by Plaintiffs' experts, who were able to give extensive input as to each aspect of the program throughout the negotiations and in settlement conferences, including details such as program goals, how to implement the program to achieve those goals, and even as to specific intensive, research-based reading interventions and services that should be used in the BUSD.  If Plaintiffs were successful in litigation and the Court ordered Defendants to develop such a program and begin to use research-based reading interventions, Plaintiffs' experts may not have been able to give such extensive input.

> b.  *The Terms of The Parties' Proposed Attorneys' Fee Award Also Weigh In Favor Of Approval.*

In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011).

In the present case, Defendants have agreed to pay Plaintiffs' counsel at total of $350,000. As set forth more fully in Plaintiffs' Motion for Attorneys' Fees (ECF No. 160), this fee award is reasonable, and therefore the Court should not only grant that motion but should also find that the terms of the Parties' proposed fee award weigh in favor of final approval.

4.  The Parties' Settlement Agreement Treats All Class Members Equitably.

Under the Parties' proposed settlement, Plaintiffs and all proposed class members will receive exactly the same relief.  In addition, no incentive awards for named Plaintiffs are sought. Thus, because the Parties' Settlement Agreement treats Plaintiffs and all other "class members equitably relative to each other," the Court should find that this factor weighs in favor of final approval.  *See* Fed. R. Civ. P. 23(e)(2)(D).

**C.     Notice to the Class Has Been Given Per Rule 23 and the Court's Instruction**

17

**With No Objection to the Settlement**.

Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  The Court-approved Notice Plan satisfied these requirements.  After Plaintiff's implemented additional guidance from the Court (*see* ECF 158) the Notice provided Class Members with information about the litigation, the Class, the claims and defenses, how to object, opt out, and appear at the Final Approval Hearing.  The deadline for objections was October 1, 2021.  As stated above, Plaintiffs did not receive any objections to the Settlement.  Shah Decl., ¶ 3.

A positive class response to a settlement weighs in favor of final approval.  *See In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 320-21 (N.D. Cal. 2018) (finding that low rates of objections and opt outs are 'indicia of the approval of the class'" (citation omitted)); *Tadepalli v. Uber Techs., Inc.,* No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (observing "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" (citation omitted)).

## IV.    CONCLUSION

In consideration of the above, Plaintiffs request that this Court enter an order granting final approval of the Settlement Agreement and certifying the proposed Settlement Class and appointing Plaintiffs' attorneys as class counsel.

DATED:  October 21, 2021                    Respectfully submitted,

By:  */s/ Claudia Center*
CLAUDIA CENTER (SBN 158255)
*ccenter@dredf.org*
MALHAR SHAH (SBN 318588)
*mshah@dredf.org*
**DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.**

18

Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, CA 94703
Tel: +1.510.644.2555
Fax: +1.510.841.8645


By: /s/ *Deborah Jacobson*
DEBORAH JACOBSON (SBN 278104)
*djacobson@jacobsoneducationlaw.com*
**JACOBSON EDUCATION LAW, INC.**
1919 Addison Street, Suite 105
Berkeley, CA 94704
Tel: +1.510.647.8125
Fax: +1.510.280.9340


By: /s/    *Shane Brun*
SHANE BRUN (SBN 179079)
*sbrun@kslaw.com*
**KING & SPALDING LLP**
601 S. California Ave.
Suite 100
Palo Alto, CA 94304
Telephone: (415) 318-1245
Fax: (415) 318-1200

*Attorneys for Plaintiffs*

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL

CASE NO. 4:17-CV-02510-JST